UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 04-0046

|  |  |
|---|---|
| DONALD J. RICHARD<br>Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| INDUSTRIAL COMMERCIAL<br>ELECTRICAL CORPORATION, INC.<br>Defendant | )<br>)<br>) |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S
## APPLICATION FOR TEMPORARY RESTRAINING ORDER

### BACKGROUND

1) On April 23, 2003, Tremont Holdings purchased the assets of three bankrupt corporations known as Industrial Commercial Electrical, Inc, I.C.E. Management Corp, and I.C.E. – Conn, Inc. See United States Bankruptcy Court District of Massachusetts, Western Division Case No. 02-45451. See attached Exhibit A. The Honorable Joel B. Rosenthal authorized the sale.

2) Tremont Holdings organized Industrial Commercial Electrical Corporation, Inc. ("Company") to receive the assets of the bankrupt corporation. The Company maintains offices at 14A Airport Drive, Hopedale, MA.

3) Upon information and belief, the Plaintiff became an employee of the Corporation on April 23, 2003.

4) On or about March 17, 2004, Mr. Michael Scanlon observed Plaintiff removing office partitions and work surfaces from the Company's warehouse.

5) As Mr. Scanlon's Affidavit relates and attached hereto as Exhibit B, Mr. Scanlon asked Plaintiff what he intended to do with the materials. Plaintiff responded that he intended to install the material at the home of Mr. David LeBlanc, the Company's former president. Plaintiff also related that he was redoing the basement of Mr. LeBlanc's attorney.

6) With respect to the installation of Company materials at the home of the Company's former president, Plaintiff performed such work during normal business hours.

1

7)    For the week ended March 20, 2004, Plaintiff submitted a time sheet for hours worked in which Plaintiff indicated that he had worked at the Company's warehouse all week. See Exhibit C.

8)    On or about April 2, 2004, the Company's Board of Directors learned of the actions of Plaintiff and its former president, Mr. David LeBlanc. This spawned an investigation and discussion of how to deal with the issue. Mr. Karl Walsh, a member of the Company's Board of Directors performed the investigation.

9)    Mr. LeBlanc refused to supply his home address to the Board of Directors.

10)   On or about April 16, 2004, Mr. Walsh confronted Plaintiff regarding his reporting of time and the use of Company materials. As Plaintiff's Verified Complaint makes clear, Mr. Walsh conveyed to Plaintiff the great importance of Plaintiff reporting what he did with Company property. Plaintiff refused to report to a Company officer a) how he spent his time, and b) where he delivered Company property.

11)   As a result of Plaintiffs refusal to reveal what he did with his time and Company property, Mr. Walsh fired Plaintiff.

12)   As a result of this investigation, Mr. LeBlanc resigned his position on April 26, 2004, upon information and belief, in an effort to preempt his termination.

13)   The Company is pursuing criminal charges against Mr. LeBlanc and Plaintiff.

14)   The Company is well aware of Plaintiff's wife's health issues. Plaintiff should have balanced his actions with his wife's needs. Plaintiff chose to participate in a theft and lie about his whereabouts. Those actions resulted in unfortunate consequences, but Plaintiff is old enough to know right from wrong and he must now deal with the consequences of his actions.

## LAW AND ARGUMENT

### GROSS MISCONDUCT

15)   Plaintiff seeks relief pursuant to 29 U.S.C. 1161. Under the Consolidated Omnibus Budget Reconciliation Act, a beneficiary may elect to continue coverage under a health care plan as a result of a qualifying event. 29 U.S.C. 1161(a). A qualifying event includes termination (*other than by reason of an employee's gross misconduct*). 29 U.S.C. 1163(2) (*emphasis supplied*). Defendant contends that: a) the theft of Company property, b) lying about one's whereabouts after accepting remuneration for time spent, and c) failing to answer the questions of a Company director, each constitutes gross misconduct.

2

*THEFT*

16)     When Plaintiff took Company property and installed it at an off-site location,
        he had a duty to properly account for the material and his time so that the
        Company could bill the beneficiary of these items. Further, the Company will
        not stay in business long should it give up its property and labor without
        recompense. The Complaint alludes to Plaintiffs knowledge of his
        wrongdoing when he states, ". . . it is not my responsibility to tell you where
        David lives." The Plaintiffs actions constitute theft. "Theft or other gross
        misconduct . . . justify the dismissal based on other important principles."
        School Dist. of Beverly v. Geller, 435 Mass. 223 FN. 14 (2001). Clearly,
        Plaintiff's actions constitute theft of Company property and time.

*FRAUD*

17)     When Plaintiff submitted his time sheet enclosed as Exhibit C, Plaintiff
        attempted to hide his activity for the day. Plaintiff had worked at one
        location, but assigned his activity to no customer, thereby defrauding the
        Company for his wages. As Plaintiff's further action show, he intended to
        deprive the Company of the right to bill for his time and for Company
        materials. A physician that fraudulently made statements in return for money
        is guilty of gross misconduct. *See* Dugdale v. Board of Registration in
        Medicine, 270 Mass. 65 (1930). Plaintiff lied about his whereabouts, received
        funds and later refused to disclose his activity. Plaintiff has defrauded the
        Corporation.

*INSUBORDINATION*

18)     When Mr. Walsh requested that Plaintiff answer his questions regarding the
        whereabouts of Company property and where Plaintiff had spent his time for
        which he had received remuneration from the Company, Plaintiff had a duty
        to provide an explanation to the Company director. Failure to respond to the
        requests of a director constitutes insubordination for which termination is
        appropriate. *See* Potris v. Commissioner of Dept. of Employment & Training
        (Mass.App.Ct. 1997). Plaintiff acknowledges in his Verified Complaint that
        he: a) knew that Mr. Walsh served as a director of the Corporation, b) admits
        his refusal to tell the director to where he removed company property and
        spent time for which he received remuneration, and c) knew that his failure to
        disclose this information would result in his termination. Plaintiff does not
        contest these facts. Plaintiff's action of insubordination rises to the level of
        gross misconduct.

19)     Therefore, because Defendant terminated Plaintiff for gross misconduct, a
        qualifying event did not occur thus not requiring the Company to extend
        insurance benefits to Plaintiff.

## FAILURE TO SHOW NEED FOR A TEMPORARY RESTRAINING ORDER

20)    Plaintiff seeks an order requiring the Defendants to offer insurance: Plaintiff is
not seeking to restrain the Defendants from doing anything. In that regard,
Defendant is not sure of the issue Plaintiff presents.

21)    Plaintiff has failed to show that he does not have an adequate remedy at law.
Plaintiff can sue the Defendants for his medical expenses should this Court,
after a jury trial, determine that the Company wrongfully prevented Plaintiff
from electing COBRA coverage. Plaintiff can obtain his own insurance
policy and seek indemnification for the difference between the amount of his
COBRA payment and his actual insurance cost, should a deficit exist.

22)    Merely preventing Plaintiff from electing COBRA coverage under the
Company's insurance policy does not constitute irreparable harm. Plaintiff is
free to seek his own health-care insurance policy. Plaintiff has not in any way
demonstrated that he or his dependents will not receive medical care. Finally,
the lack of insurance, in and of itself, does not result in irreparable harm.

### CONCLUSION

For the forgoing reasons, Defendants request that this Court:

a)    Deny Plaintiffs motion for a Temporary Restraining Order;

b)    The Court award Defendants its attorney fees associated with this matter;

c)    And for all such further relief as this Court deems equitable.

Defendant,
By its Attorney

William J. Burns
1001 North Main Street
Randolph, MA 02368
(781) 961-6787
BBO# 637538

## CERTIFICATE OF SERVICE

I, William J. Burns, attorney for the Defendants hereby certify that I served a copy of DEFENDANT'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER, by Hand on May 5, 2004.

William J. Burns

# EXHIBIT A

CLERK'S OFFICE

2003 APR 17 P 3: 46

U.S. DISTRICT COURT
DISTRICT OF MASS

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In re: | ) |
| INDUSTRIAL COMMERCIAL ELECTRICAL, INC. et al | ) |
| Debtors | ) |

Chapter 11
Case No.: 02-45451-JBR
Jointly Administered

### ORDER AUTHORIZING SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS BY PRIVATE SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS

THIS MATTER having come before the Court on the *Assented-To Motion Of The Debtors For Order (I) Authorizing and Approving Notice of Intended Private Sale of Substantially All Of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances (II) Bidding Procedures; (III) Shortening Notice Pursuant to Fed. R. Bankr. P. 2002; (IV) Sale of Substantially All of Debtors' Assets Free and Clear of All Lien, Claims, and Encumbrances; And (V) Scheduling Final Hearing* (the "Sale Motion"), pursuant to which Industrial Commercial Electrical, Inc., I.C.E. Management Corp., I.C.E.-Conn, Inc. (the "Debtors") seek authority to enter into and consummate the terms of an Asset Purchase Agreement as Amended (the "Agreement"), a copy of which is attached to the Sale Motion as Exhibit A, providing for the sale of substantially all of the Debtors' assets to Tremont Holding Corporation, Inc. (the "Buyer").

On April 3, 2003, the Court approved the *Amended Notice of (I) Intended Private Sale of Substantially All Of Debtors' Assets Free and Clear of All Liens, Claims, And*

*Encumbrances; (III) Deadline for Filing and Serving Objections And/Or Higher And Better Offers; And (IV) Final Hearing on Debtors' Motion to Authorize and Approve Sale of Substantially All of Debtors' Assets Free and Clear of All Liens, Claims, And Encumbrances.* (the "Notice of Private Sale").

On April 18, 2003, the Court held a hearing on the Sale Motion (the "Sale Hearing"). Unless otherwise defined herein, capitalized terms set forth in this Order shall have the same meanings ascribed to them in the Agreement.

**NOW, THEREFORE,** based upon all of the evidence, including evidence proffered or adduced at the Sale Hearing, objections, representations and arguments of counsel in connection with the Sale Motion, and offers of proof on the record, and upon the entire record of the Sale Hearing and of the Chapter 11 case of the Debtor, and after due deliberation thereon, and good cause appearing therefor, it is hereby FOUND that:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014. To the extent that any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and vice versa.

B.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334.

C.    Venue of this case in this district is proper pursuant to 28 U.S.C. §§ 1408(a) and 1409(a).

D.    Determination of the Sale Motion is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (N). The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105 and 363, Fed. R. Bankr. P. 6004 and 9014, and MLBR 6004-1(a).

E.    On September 6, 2002 (the "Petition Date"), the Debtors commenced these cases by filing separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Since that time, the Debtors have continued in the possession of their assets as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

F.    On September 6, 2002, the Court granted the Debtors' motion for an order approving joint administration of the Debtors' cases.

G.    On September 11, 2002, the Court ordered that the Office of the United States Trustee appoint an examiner with expanded powers in the Debtors' cases, after which the Office of the United States Trustee appointed Mr. Stephen F. Wentzell to be the examiner with expanded powers in the Debtors' cases (the "Examiner") who was vested with general oversight authority over the operation and management of the Debtors' businesses.

H.    On September 13, 2002 the United States Trustee formed the Committee pursuant to Bankruptcy Code § 1102. The Committee consists of the following unsecured creditors of the Debtors' estates: (i) Webster Electrical Supply; (ii) Graybar Electric Co., Inc.; (iii) United Rentals; and (iv) Global Technologies, Inc.

I.    On March 20, 2003, after various efforts to solicit an offer for the purchase of the assets, the Debtors have received an offer from Buyer for the purchase thereof. On

3

or about April 2, 2003, the Debtors and Buyer entered into an Asset Purchase Agreement, as Amended.

J.      The Sale Motion of the Debtors filed with the Court on April 2, 2003 having come on for hearing before the Court on April 18, 2003 after due notice to the Debtor, to all parties in interest, including all creditors, shareholders, any parties evidencing an interest in purchasing some or all of the assets, counsel to the Official Committee of Unsecured Creditors, the individual committee members and to the United State Trustee, and a Notice of Intended Sale having been approved by this Court and having been mailed to all the above-listed parties, it is hereby ORDERED, ADJUDGED AND DECREED that:

1)      Buyer has made an offer to purchase the Purchased Assets and has deposited $100,000 with Counsel to the Debtors. .

2)      In the event that such amounts have not been paid prior to the entry of this Order, Buyer, shall immediately pay to Debtors, in addition to all other amounts required to be paid by Buyer under the Agreement, any and all amounts required to be paid by Buyer to Debtors pursuant to Section 4(a) of the Agreement.

3)      No other person or entity has filed a Qualified Counteroffer.

4)      The sale of the Purchased Assets to Buyer shall be made free and clear of all liens, claims, and encumbrances and other interests in the Purchased Assets. Any liens in the Purchased Assets shall attach to and be enforceable against the proceeds of the sale authorized herein to the same extent and in the same order of priority as any such lien attached to or was enforceable against the Purchased Assets.

5)      There are sound business reasons for the Debtors to effectuate the sale of the Purchased Assets pursuant to 11 U.S.C. § 363(b) and that such sale free and clear of all liens, claims, and encumbrances and other interests in the Purchased Assets and other monetary interests in the Purchased Assets is authorized under the provisions of § 363(b), (c), (f), and (m) of the Bankruptcy Code.

6)      The consideration payable by the Court-approved offeror constitutes payment of "value" for the Purchased Assets.

7)      Upon consummation of the sale authorized hereunder, the offeror shall be a purchaser of the Purchased Assets "in good faith" within the meaning of §363(m) of the Bankruptcy Code.

8)      Upon consummation of the sale authorized hereunder, the proceeds of the sale shall be held in escrow by Counsel to the Debtors until further order of the Court, *provided, however*, (i) that Counsel to the Debtors shall, as soon as practicable following the receipt of the Purchase Price, deliver to Flagship Bank & Trust Co. the sum of One Hundred Forty-Five Thousand Dollars ($145,000.00) as set forth in Subsections (b), (c), and (d) of Section 3.4 of the Agreement, and (ii) that funds sufficient in amount to pay in full all allowed administrative expenses of the estates for which the Examiner may be obligated or may become obligated shall be deposited into said escrow account and, within seven (7) days of the receipt by Counsel to the Debtors of an order allowing payment of such administrative expenses of the estates, the amount allowed by the court shall be paid directly to such administrative claimants.

9)    The minimum terms proposed for a Qualified Counteroffer for the Purchased Assets is deemed as fair and reasonable under the particular circumstances.

10)    The sale was not controlled by an agreement among potential bidders at such sale as referenced in 11 U.S.C. §363(n). The Debtors or their principals are not insiders of the Buyer. The Buyer and its principals are not insiders of the Debtors.

11)    Buyer ~~is not a successor of the Company and is not subject to~~ has not agreed to assume (subject to §2.3 of The Agreement) any liability for claims against the Company, whether existing at the time of Closing or arising thereafter.

12)    Appropriate notice and opportunity to be heard with respect to the motion and transaction contemplated have been afforded to all of the necessary parties and otherwise satisfies the requirements of Rules 2002(a)(2) and 6004 (a) and (c) of the Federal Rules of Bankruptcy Procedure and Rule 6004-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Massachusetts.

13)    Based upon the findings and conclusions set forth herein, the Sale Motion is hereby ALLOWED in all respects, and the Examiner and/or the President of the Debtors are hereby authorized to execute and deliver on behalf of the Debtors any documents necessary to effectuate the sale authorized and approved herein.

14)    Notwithstanding Rule 6004(g) of the Federal Rules of Bankruptcy Procedure, this Order shall become effective immediately.

April 18, 2003

Joel B. Rosenthal
U.S. Bankruptcy Judge

6

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 04-0046

| | |
|---|---|
| DONALD J. RICHARD<br>Plaintiff | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| INDUSTRIAL COMMERCIAL | ) |
| ELECTRICAL CORPORATION, INC. | ) |
| Defendant | ) |

## AFFIDAVIT OF MICHAEL SCANLON

I, Michael Scanlon, hereby depose and say:

1.    My name in Michael Scanlon.

2.    I am an employee of Industrial Commercial Electrical Corporation, Inc.
      located at 14A Airport Drive, Hopedale, MA ("Company"). I became an
      employee on or about March 9, 2003.

3.    On or about March 17, 2004, at approximately 11:00 a.m., I observed Mr.
      Donald Richard loading office partitions and work surfaces into his personal
      vehicle. I asked Mr. Richard what he intended to do with the partitions. Mr.
      Richard informed me that he intended to install the materials at the office of
      the Company president, Mr. David LeBlanc.

4.    Mr. Richard also informed me that he was working on finishing the basement
      of Mr. LeBlanc's attorney's home. I do not recall the name of the attorney.

5.    Subsequent to this activity, I observed Mr. Richard's time sheet. On that time
      sheet, Mr. Richard reported to the Company that he had worked in the shop all
      week.

6.    During the week in question, I had the responsibility of overseeing Mr.
      Richard in the shop. I noted the discrepancy and reported the same to Mr.
      Karl Walsh.

Submitted under the pains and penalties of perjury this 5th day of May, 2004

_(signature)_
_____
Michael Scanlon

# EXHIBIT C

# Industrial Commercial Electrical Corp., Inc.
## MILEAGE LOG

Employee DONALD RICHARD

Employee Number 144

WEEK ENDING 3-20-03

| DATE: | 3-15 | 3-16 | 3-17 | 3-18 | 3-19 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Location:Start | SHOP | SHOP | SHOP | SHOP | SHOP | | | | | | |
| Location:End | HOME | HOME | HOME | HOME | HOME | | | | | | |
| Odometer:Start | 101760 | 101460 | 101600 | 101740 | 101880 | | | | | | |
| Odometer:End | 101460 | 101600 | 101740 | 101800 | 102020 | | | | | | |
| Total Miles | 100 | 140 | 140 | 140 | 140 | | | | | | |
| JOB # | | | | | | | | | | | |
| Supervisor | -60 | -60 | -60 | -60 | -60 | | | | | | |
| TOTALS | 40 | 80 | 80 | 80 | 80 | | | | | | |

Supervisor Signature: D. on Richard

Super. Initials: _____

Approval Initials: _____

Employee Initials: _____

*Industrial Commercial Electrical Corp., Inc.*

Weekly Time Sheet

FAX: 508-754-3892

Employee: _DONALD RICHARD_  No. _100_  Week Ending _3/20/04_

| DATE | JOB NO. | CUSTOMER/LOCATION | Time Arrived on Job | Time Departed Job | Hours on the Job | Hours Traveled to Job | Hours Traveled from Job | Total Travel Time | Days or Nights Worked? | Number of Nights Stayed |
|------|---------|-------------------|---------------------|-------------------|------------------|-----------------------|-------------------------|-------------------|------------------------|-------------------------|
| 3-15 | 4947 | SHOP | 8AM | 5PM | 9 | | | | | |
| 3-16 | | SHOP | 700 | 430 | 9.5 | | | | | |
| 3-17 | | SHOP | 730 | 500 | 9.5 | | | | | |
| 3-18 | | SHOP | 800 | 400 | 8 | | | | | |
| 3-19 | | SHOP | 700 | 1200 | 5 | | | | | |
| | | | | | | 4947 40 | | | | |
| | | | | | | 4947 OT 1 | | | | |

Total Hrs. Worked: _41_                    Total Hrs. Traveled: