UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DONALD J. RICHARD<br>    Plaintiff<br><br>v.<br><br>INDUSTRIAL COMMERCIAL<br>ELECTRICAL CORPORATION<br>    Defendant | CIVIL ACTION NO.<br>04-40066-NMG |

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Proposed Findings of Fact

    1. Donald J. Richard, the Plaintiff is a resident of Winchendon, Massachusetts and resides at 70 Gardner, Road.

    2. The Defendant, Industrial Commercial Electrical Corporation (ICE) has its principal place of business in Hopedale, Massachusetts.

    3. Mr. Richard became an employee of ICE, April, 2003. At the time the Company was located on Short Street in Worcester, Massachusetts. Prior to becoming and employee of ICE, he was employed by Industrial Commercial Electrical, Inc. ,and had been since August, 1991. The Defendant purchased the assets of that corporation in a bankruptcy proceeding and was the successor in interest.

    4. At the time Mr. Richard became an employee of ICE, he was a Foreman Data Technician working on communication and other low voltage systems. As a foreman he was responsible for running the job and work. His job after the purchase by the Defendant remained the same. However, he had to purchase his own truck (under the old company he had the use of the company vehicle). Mr. Richard bought a 1997 Ford F 150

pick up truck. Since his vehicle was used for company business he received a vehicle allowance of $115.00 per week and was paid 14 cents per mile after the first 30 miles of his commuting distance in each direction between his home and the job every day.

5. As an employee of the Defendant, Mr. Richard reported to David LeBlanc (President) and Dwayne Le Blanc(Project Manager).

6. Mr. Richard is married; his dependent wife suffers from "multiple sclerosis (MS). In addition his wife has chronic obstructive pulmonary disease. Hashimoto disease, depression and PTSD. She requires a substantial amount of medications and medical care. The cost of her medication is approximately $2,300.00/month. The Plaintiff was covered under the family health insurance plan offered by ICE. At all times the Defendant and its representatives were aware of the medical condition of Mr. Richard's wife

7. During the month of March, the Defendant was in the process of moving from its Short Street location to 14A Airport Drive, Hopedale, MA.

8. During the week ending March 20, 2004, Mr. Richard worked moving material from the Short Street warehouses and offices to the Hopedale location. Specifically, he would drive from his home to Short Street in Worcester pick up and load material on his truck and transport it to 14A Airport Drive, Hopedale. In particular he would pick up in Worcester filing cabinets, office modules, partitions, desks, counter tops, and transport them to the new shop, and put them in the Hopedale warehouse or office. This procedure is verified by his mileage log.

9. One day during the week of March 15 through March 19, 2004, David LeBlanc directed Mr. Richard to pick up at the Short Street warehouse certain personal

effects of his to put them on his truck and to deliver them to his new apartment later that week. David LeBlanc specifically told Mr. Richard what property belonged to him and where it was located in the warehouse. Mr. Richard did what he was told to do.

10. Other persons involved in the move were Dwayne LeBlanc, Wayne Johnson and David LeBlanc's son and an employee named Rick.

11. Mike Scanlon came to work for ICE in March 2004. As a matter of fact, he worked on a Staple job in West Bay Shore, NY that Mr. Richard was in charge of on March 22, 2004. Mr. Richard worked without incident continually to April 16, 2004.

12. On April 16, 2004, Dwayne LeBlanc told Mr. Richard that Mr. Walsh wanted to see him at his office. Dwayne LeBlanc had to show Mr. Richard where Mr. Walsh's office was located because Mr. Richard was not familiar with Mr. Walsh.

13. At his meeting with Mr. Walsh, Mr. Walsh accused Mr. Richard of stealing from the company. Mr. Richard denied the accusation. Mr. Burns then told Mr. Richard that he must tell him where David LeBlanc lives—"and if I like my job and you know what is good for you, you will bring me down to Dave's house." Mr. Richard refused and left the meeting.

14. Shortly thereafter, while driving home, Mr. Walsh called Mr. Richard on his cell phone and was told by Walsh "if I didn't hear from you in ten minutes consider yourself terminated." Mr. Richard did not call back and was terminated.

15. On April 21, 2004, Mr. Richard went to the company office to pick up his pay check. At that time he met with William Burns who identified himself as the company's attorney. Burns told the Plaintiff that he was terminated for "stealing." The Plaintiff denied stealing, or that he did anything wrong, and asked for the necessary

papers to provide him with COBRA coverage. Burns told him that the company was not going to offer him COBRA coverage.

16. There is no evidence that the Plaintiff while an employee of the Defendant engaged in any misconduct or wrongdoing.

## CONCLUSIONS OF LAW

1. The jurisdiction of this Court is based upon *Employee Retirement Security Act of 1974 § 601 et seq as amended 29U.S.C. 1161 et seq 1162(2)(A)(i); 1163(2)*.

2. The Consolidated Omnibus Budget Reconciliation Act of 1986 provides that for a maximum of eighteen months, *29 U.S.C. 1162(2)(A)(I)*, employees, former employees and qualified dependents may elect to continue health care benefits provided by the employer, *29 U.S.C. 1161*.

3. The employee must pay these benefits himself at a fixed cost which is governed by the statute *29 U.S.C. 1162(3)*.

4. The employee only becomes eligible after a qualifying event. The qualifying event here is termination for other than gross misconduct *29 U.S.C. 1163(2)*.

5. To be relieved from its obligation to offer COBRA coverage, the Defendant must demonstrate that the employee did engage in gross misconduct. *Kariotis v. Navistrar Intern.Transp. Corp. 131 F.3$^d$ 672, 680-681 (7th Cir. 1997)*.

6. Gross misconduct means conduct that is so outrageous that it shocks the conscience. Stealing company funds may constitute gross misconduct and relieves the employer of its COBRA obligation if the employee is terminated for that reason. *Cottee v. Cooperative De Ahorro Y Credito Yabucoena 77 F. Supp. 3rd 237 241 (1991); Coney & Bath Associates 803 F. Supp. 1388, 1396(1992)*.

4

7. There is no evidence in this case that Mr. Richard "stole" from the company. Mr. Richard only did what he was directed to do by his supervisor i.e. the President of the company. His time card and mileage logs were accurate and approved by his supervisor.

8. There is no evidence that Mr. Richard was guilty of gross misconduct. Accordingly, it must be concluded ICE unreasonably determined that Mr. Richard committed gross misconduct and wrongfully denied him his COBRA benefits.

9. Under the circumstances presented the Defendant must afford the Plaintiff, Mr. Richard the opportunity to elect COBRA benefits.

10. Based upon the foregoing, particularly ICE's conduct (bad faith) and the relative merit of the parties' position, Mr. Richard is entitled to his attorney fees under *29 U.S.C. 1132(g), Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F. $3^d$ 220. 225 (1st Cir. 1996); Gallagher v. Park West Bank & Trust Co., 951 F. Supp. 10, 12 (D. Mass. 1997)*, and cost of these proceedings.

Respectfully submitted,

Donald J. Richard

By his attorney

_____
Robert Weihrauch
446 Main Street
Worcester, MA 01608
508-752-7549
BBO# 519240

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH (OTHER) PARTY BY MAIL ON 7/15/04

SIGNATURE _____

5