UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 04-0046

| | |
|---|---|
| DONALD J. RICHARD<br>    Plaintiff<br><br>v.<br><br>INDUSTRIAL COMMERCIAL<br>ELECTRICAL CORPORATION, INC.<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Proposed Findings of Fact

1. The Plaintiff, Donald Richard, was born on March 10, 1945, and resides at 70 Gardner Road, Winchendon, MA.

2. The Defendant, Industrial Commercial Electrical Corporation, Inc. ("ICE"), organized pursuant to the laws of the Commonwealth of Massachusetts on April 18, 2003, maintains its principal place of business at 14A Airport Drive, Hopedale, MA.

3. At the time ICE organized, Dave LeBlanc served as the President, Karl Walsh served as the Treasurer, and Atty. William Burns served as the Secretary. Additionally, all three served as Directors of the corporation.

4. On or about April 18, 2004, Plaintiff became an employee of the Defendant. At the time Plaintiff became an employee, ICE maintained its principal place of business at 3 Bethany Street and 9 Short Street, Worcester.

5. As Defendant's employee, Plaintiff installed low-voltage wiring for computers, telephones, sound systems, security systems and closed-circuit

1

televisions. In addition, Plaintiff performed handy-man functions around the shop installing shelving and helped move and organize stock.

6. During the course of his employment, Mr. Richard attended several company-wide meetings that ICE organized in which Mr. Karl Walsh spoke regarding his role at the company and his vision of where he intended to take ICE. Further, Mr. Richard observed Karl Walsh at ICE's offices on a number of occasions and knew on April 16, 2004, that Mr. Walsh was in charge of ICE.

7. During the month of March 2004, ICE began moving its principal place of business from its complex in Worcester, to 14A Airport Drive, Hopedale. The Plaintiff participated in moving materials during this move.

8. On or about March 17, 2004, Mr. Michael Scanlon, an ICE employee, observed Plaintiff remove office partitions and work surfaces from an ICE warehouse and load the same into his personal vehicle. Mr. Scanlon inquired of Plaintiff as to what he intended to do with the partitions. Plaintiff responded that he intended to install the partitions at the apartment of Mr. David LeBlanc.

9. Subsequent to March 20, 2004, Mr. Scanlon happened to review Plaintiff's time sheet for the week ended March 20, 2004, and noted that Plaintiff had actually disappeared for several hours on March 17, 2004, and did not participate in helping ICE move. Plaintiff's time sheet for the week in question reported that Plaintiff had worked on the move. This time-sheet discrepancy coupled with the office partition comment caused Mr. Scanlon to

discuss the issue with Mr. Karl Walsh. This discussion spawned an investigation by Mr. Karl Walsh.

10. On April 16, 2004, Mr. Walsh attempted to contact Mr. LeBlanc regarding Plaintiff's activities during the week of March 20, 2004, and missing company materials. For the week ended April 17, 2004, Mr. LeBlanc had purported to take a vacation and did not return any of Mr. Walsh's phone calls.

11. Failing to get in touch with Mr. LeBlanc, Mr. Walsh then directed Mr. *Dwayne* LeBlanc, David LeBlanc's brother, to have the Plaintiff visit with Mr. Walsh on April 16, 2004. Mr. Dwayne LeBlanc did indeed instruct the Plaintiff to visit with Mr. Walsh. At the meeting between Mr. Walsh and Plaintiff, Mr. Walsh told the Plaintiff that Mr. Walsh needed to speak with Mr. David LeBlanc and that David did not answer his phone or respond to repeated messages left for him. Mr. Walsh then told the Plaintiff that Mr. Walsh needed to know where David lived. Plaintiff informed Mr. Walsh that Plaintiff did not know David's address, but that Plaintiff did know how to get to David's house. Plaintiff agreed to show Mr. Walsh where David lived. In the span of ten minutes, Plaintiff reconsidered and then refused to show Mr. Walsh where David lived.

12. Upon Mr. Walsh receiving the news of Plaintiff's refusal to show Mr. Walsh where David LeBlanc lived, Mr. Walsh had a least two more conversations with Plaintiff. At each conversation, Mr. Walsh explained to Plaintiff that:

3

   a. Plaintiff probably did not understand that he had removed property belonging to the company with the purpose of permanently depriving the owner thereof;

   b. ICE had paid for Plaintiff's time based on his time sheet for the week ended March 20, 2004, yet Plaintiff did not present an accurate time sheet for payment failing to account for time spent at David LeBlanc's home as well as performing other activities;

   c. Plaintiff would lose his job if he did not take Mr. Walsh to where David lived; and

   d. Plaintiff had 10 minutes to consider his actions carefully regarding taking Mr. Walsh to David LeBlanc's home.

13. Subsequent to losing his employment with ICE, Plaintiff has not taken any efforts to secure new employment or even tried to obtain health insurance elsewhere. Plaintiff admits to have received a job offer from David LeBlanc, but Plaintiff claims to have not started that job.

## Conclusions of Law

14. Plaintiff claims that he has the right to participate in the Defendant's group health insurance program pursuant to 29 U.S.C. § 1161. This Court has jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1331 which provides that the district courts shall have original jurisdiction of all civil actions arising under the laws of the United States. In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to

claims in the action within such original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367. Defendant's counterclaims fall squarely within this definition as the causes of action relate to the same facts and circumstances.

15. Under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), a beneficiary may elect to continue coverage under a health care plan as a result of a qualifying event. 29 U.S.C. § 1161(a). A qualifying event includes termination (*other than by reason of an employee's gross misconduct*). 29 U.S.C. § 1163(2) (*emphasis supplied*). Therefore, if an employer terminates an employee for gross misconduct, a qualifying event does not occur and an employer may, but need not allow a beneficiary to elect to continue coverage under a health care plan. "The COBRA statute does not provide a definition of 'gross misconduct' and federal case law addressing the issue is sparse." Zickafoose v. UB Services, Inc. 23 F.Supp.2d 652, 655 (S.D.W.VA 1998). "Some courts have looked to state laws for guidance in defining gross misconduct . . . [while] others have applied the ordinary meaning of statutory terms. Cotte v. Cooperativa De Ahorro Y Credito Yabucoena, 77 F.Supp.2d 237 (D.Puerto Rico 1999). Termination by reason of 'gross misconduct' refers to the 'fact (not suspicion) of gross misconduct'." Id.

### Gross Misconduct and & Plaintiff's Theft

16. During the week ended March 20, 2004, at a time when Defendant paid Plaintiff wages, Plaintiff took company property and installed it in the home of David LeBlanc. Plaintiff failed to account for his time accurately on his

time sheet when he submitted it and received his hourly wages for the week in question. Misappropriation of company funds constitutes gross misconduct. <u>Conery v. Bath Associates</u>, 803 F.Supp. 1388, 1396 (N.D.Ind. 1992). "Theft or other gross misconduct . . . justify the dismissal based on other important principles." <u>School Dist. of Beverly v. Geller</u>, 435 Mass. 223 FN. 14, 755 N.E.2d 1241 (2001); <u>Burke v. American Stores Employee Ben. Plan</u>, 818 F.Supp.1131 (N.D.Ill. 1993). Theft consists of taking the property of another and converting it, regardless of when the conversion occurs. MASS. GEN. LAWS ch. 266, § 30. Plaintiff took property from an ICE warehouse, delivered it to Mr. LeBlanc's home, and installed the property at Mr. LeBlanc's home. Plaintiff did this during time for which ICE compensated Plaintiff. Then, Plaintiff contends Mr. David LeBlanc instructed Plaintiff to not tell anyone where David LeBlanc lived, which David LeBlanc denies. Plaintiff admits that prior to this occasion, he had never removed company property from its warehouse and installed it at the home of a corporate officer before. Plaintiff also admits that this is the first time Mr. David LeBlanc had ever instructed Plaintiff to not reveal where Mr. David LeBlanc lived. When confronted with the theft of company property and the inaccurate time sheet, Plaintiff refused to help in the investigation of the incident. Plaintiff's actions show that he knew he wrongfully took ICE property and that he also purposely submitted a time sheet that did not reflect his true activity.

<u>Gross Misconduct and & Plaintiff's Fraud</u>

17. When Plaintiff submitted his time for the week ended March 20, 2004, Plaintiff committed fraud by hiding his true activity when he did not perform work for his employer, but accepted payment from his employer for work performed at David LeBlanc's home. "[E]ncouraging employee honesty is a public policy which should be applied nationwide. <u>Burke v. American Stores Employee Ben. Plan</u>, 818 F.Supp. 1131, 1136 (N.D.Ill. 1993). A physician that fraudulently made statements in return for money is guilty of gross misconduct. *See* <u>Dugdale v. Board of Registration in Medicine</u>, 270 Mass. 65, 169 N.E. 547 (1930). To recover for fraudulent conduct Defendants must allege and prove that Plaintiff made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the Defendant to act thereon, and that the Defendant relied upon the representation as true and acted upon it to his damage. <u>Barrett Associates, Inc. v. Aronson</u>, 346 Mass. 150, 152, 190 N.E.2d 867, 868 (1963). Plaintiff submitted a time sheet to the Company that included time when he worked for David LeBlanc in his apartment and Plaintiff accepted payment of money from ICE based on his fraudulent time slip. Plaintiff committed fraud and an act of dishonesty that rises to the level of gross misconduct.

<u>Gross Misconduct and & Plaintiff's Insubordination</u>

18. When Mr. Walsh requested that Plaintiff answer his questions regarding the whereabouts of Company property and where Plaintiff had spent his time for which he had received remuneration from the Company, Plaintiff had a duty

7

to provide an explanation to the Company director. Federal courts do not appear to have addressed the issue of whether failing to cooperate with an investigation constitutes "gross misconduct" under 29 U.S.C. § 1163(2). Failure to respond to the requests of a director constitutes insubordination for which termination is appropriate. *See* Potris v. Commissioner of Dept. of Employment & Training 42 Mass.App.Ct. 735, 679 N.E.2d 605 (1997). Plaintiff acknowledges in his Verified Complaint that he: a) knew that Mr. Walsh served as a director of the Corporation, b) admits his refusal to tell the director to where he removed company property and spent time for which he received remuneration, and c) knew that his failure to disclose this information would result in his termination. Plaintiff does not contest these facts. Plaintiff's action of insubordination rises to the level of gross misconduct.

### Defendant's Counterclaim for Breach of Contract

19. Plaintiff committed breach of contract with ICE. In this action ICE has the burden of proof to show the following elements by a preponderance of the evidence: (1) an offer; (2) an acceptance; (3) consideration; (4) breach; and (5) damages. Carney v. New England Telephone & Telegraph Co., 353 Mass. 158, 164, 228 N.E.2d 723 (1967). Plaintiff provided his labor to ICE for which Plaintiff received compensation from ICE. The parties had a contract between them: Plaintiff worked, ICE received the benefits of his labor and ICE charged its clients for the Plaintiff's labor. When Plaintiff installed ICE's materials in David Leblanc's home without informing ICE of his actions,

Plaintiff committed breach and ICE suffered damage for the loss of the materials. When ICE compensated Plaintiff for his time based upon a time sheet that did not reflect Plaintiff's true activities because Plaintiff had worked at David LeBlanc's home, Plaintiff committed breach of contract and ICE suffered damage.

### Defendant's Counterclaim for Conversion

20. Plaintiff wrongfully exercised dominion and control of ICE's property and converted it so that Plaintiff's friend, David LeBlanc could have an office in his home. The elements of conversion require that ICE prove that Plaintiff "intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time...." Abington Natl. Bank v. Ashwood Homes, Inc., 19 Mass.App.Ct. 503, 507, 475 N.E.2d 1230, 1233 (1985). Plaintiff took office partitions from ICE's warehouse for the express purpose of installing them in the home of Mr. David Leblanc. Plaintiff had no right to take any of ICE's property for this purpose. As a result of his actions, Plaintiff has converted ICE's property.

### Defendant's Counterclaim for Breach of the Duty of Loyalty

21. Plaintiff worked for ICE in a supervisory capacity, a position of trust, and thus had a duty of loyalty to ICE. Employees occupying a position of trust and confidence owe a duty of loyalty to their employer and must protect the interests of their employer. Chelsea Indus. v. Gaffney, 389 Mass. 1, 11, 449 N.E.2d 320, 326 (1983). Plaintiff worked for ICE and supervised other employees of the company. The company entrusted him with purchasing

9

materials, installing materials, supervising employees and having authority to work independently. Plaintiff had to exercise his judgment when he worked for ICE. Plaintiff admits that he had never taken property from an ICE warehouse and installed it into the home of an employee of ICE. Plaintiff claims that David LeBlanc instructed him not to tell anyone where David LeBlanc lived. Plaintiff did not cooperate in an investigation Mr. Karl Walsh conducted. Plaintiff admitted that David LeBlanc did not have an office in his former apartment. These factors should have indicated to Mr. Richard that something was amiss. At the very least, Mr. Richard had duty to help recover ICE's property. As a result of his actions, Plaintiff has committed breach of his duty of loyalty to ICE.

### Attorneys Fees and Costs

22. Plaintiff removed company property from a warehouse, installed it at the home of David LeBlanc, lied as to his whereabouts on his time sheet for which ICE paid him compensation, and refused to cooperate with a director investigating the incident. ICE is entitled to attorney's fees pursuant to 29 U.S.C. § 1132(g). Gray v. New England Tel. and Tel. Co. 792 F.2d 251 (1st Cir. 1986). Further, Plaintiff filed the instant action when he discovered the true consequences of his actions. Plaintiff is justifiably desperate to maintain his health insurance coverage, but that does not excuse his conduct towards his employer, ICE. ICE employees between 20 and 30 other people that depend on the company for their livelihood. A company that allows its employees to: take property, spend their time doing whatever they feel like

doing and not help in recovering property and funds, will not stay in business long. Mr. Richard has demonstrated economy with the truth for which ICE compensated him. After he filed the instant action, ICE has had the burden of depositions, attorney's fees, paying wages of employees that participated in preparation for trial and that will also testify. Mr. Richard should have the burden of indemnifying ICE for attorney's fees and other litigation costs.

Defendant,
By its attorney,

_/s/ William J. Burns_____
William J. Burns
BBO# 637538
1001 North Main Street #8
Randolph, MA 02368
(781) 961-6787

## CERTIFICATE OF SERVICE

I, William J. Burns, attorney for the Defendant, hereby certify that I served a true copy of the above document upon the Plaintiff, through his attorney, by facsimile to 508-799-0478, as well as by first class mail on July 19, 2004.

_/s/ William J. Burns_____
William J. Burns

11